IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

TERESA BROUSSARD, as Guardian of Austin Weaver                                    PLAINTIFF

v.                                                 No. 2:10-CV-02106

WALDRON SCHOOL DISTRICT; JAMES
FLOYD, individually and in his official
capacity as Superintendent; ALICE
McCONNELL, individually and in her
official capacity as Principal; GARY
CLEPPER, individually and in his official
capacity as School Resource Officer; and
DAVID MAXWELL, individually and in his
official capacity as School Mental Health Therapist                               DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Currently before the Court are Defendants' Second Motion for Summary Judgment (Doc. 30) with supporting documents (Docs. 31-32), Plaintiff's Response (Docs. 36-37), and Defendants' Reply (Doc. 38).

Plaintiff is the Court-appointed legal guardian of her adult son, Austin Weaver ("Austin"). Plaintiff filed this civil rights action on behalf of her son on July 21, 2010, for alleged violations of Austin's constitutional rights, pursuant to 42 U.S.C. § 1983, by the Waldron School District and several of the District's current and former employees, including former Superintendent James Floyd ("Floyd"), former Waldron High School Principal Alice McConnell ("McConnell"), school resource officer Gary Clepper ("Clepper"), and former school mental health therapist David Maxwell ("Maxwell"). Austin was an 18-year-old Waldron High School student at the time that the events that are the subject of this lawsuit took place.

**I. Legal Standard**

Defendants in their Second Motion for Summary Judgment have submitted 36 pages of supporting documentation (Doc. 31, pp. 14-50) to substantiate their version of the facts at issue; whereas Plaintiff has submitted no additional materials and relies instead on the allegations she made in her Amended Complaint. In determining whether summary judgment is appropriate, the burden is placed on the moving party to establish both the absence of a genuine dispute of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986); *Nat'l. Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999). "Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists." *Lower Brule Sioux Tribe v. State of South Dakota*, 104 F.3d 1017, 1021 (8th Cir. 1997).

In order for there to be a genuine issue of material fact, the non-moving party must produce evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994*) (*quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986)). Here, Defendants have asserted certain facts (Doc. 32), which are supported through various e-mails, reports, and affidavits submitted by Defendants or by their many witnesses. Plaintiff in response has failed to produce her own evidence to counter Defendants' proof. Instead, she merely denies Defendants' facts, calling them "unknown," "ambiguous," "vague," or "unsupported," and asks the Court to treat her version of events, as stated in her Amended Complaint, as true. (Doc. 37, pp. 3-5). Plaintiff has submitted her own affidavit to accompany her opposition to Defendants' Motion for Summary Judgment; but Plaintiff's affidavit is unhelpful to

the Court, in that it provides no new evidence, but merely states that the allegations contained in Amended Complaint are true to the best of Plaintiff's knowledge. (Doc. 36-1, p. 1).

In reviewing the facts submitted by each party in response to the Motion for Summary Judgment, the Court observes that only the facts that are material to the outcome of the case are to be considered. *Anderson*, 477 U.S. at 247-48. Moreover, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* (emphasis in original). Below, the Court will analyze the relevant facts of the case, focusing only on those facts that are germane to deciding the Motion currently before the Court. Where there is a factual dispute between the parties, the Court will consider the parties' evidence submitted in support of the facts, and where a genuine issue of material fact is in dispute, the Court will view the evidence in a light most favorable to Plaintiff, as the party opposing the Motion for Summary Judgment. *Canada v. Union Elec. Co.,* 135 F.3d 1211, 1212-13 (8th Cir. 1998) (citing *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983)).

**II. Facts**

The causes of action asserted in Plaintiff's Amended Complaint stem from events that occurred in late October and early November of 2009, when Plaintiff's son Austin was a student at Waldron High School. During that time period, several of Austin's teachers became concerned and even disturbed about his classroom behavior and his writings, particularly his poetry. They worried that Austin might be a danger to himself or to others. These teachers contacted school resource officer, Defendant Clepper, to make him aware of the situation. Several exhibits submitted by Defendants, including contemporaneous e-mails and letters from Austin's teachers, as well as copies

of poems and letters written by Austin, support Defendants' version of these facts. *See* Doc. 31, pp. 14-23, 27-28. It is important to note that a subjective analysis of Austin's behavior and writings is unnecessary when deciding summary judgment. The Court need not engage in an investigation as to whether Austin's behavior was actually disturbing or threatening. Instead, what is material to the Court's analysis is that several of Austin's Waldron High School teachers were so concerned with Austin's behavior immediately preceding the events of November 2 and 3, 2009, that they contacted the school's safety officer, Clepper, for assistance, with the reasonable expectation that Clepper would, in some manner, investigate or monitor the situation.

Turning to events that are purported to have taken place on Monday, November 2, 2009, the Amended Complaint states that on that date, various school officials forcibly detained Austin, searched him for weapons, questioned him, threatened him, and ultimately intimidated him. Austin's writings were allegedly scrutinized, and he was confined in what Plaintiff describes as a "locked room." (Doc. 27, p. 13). Plaintiff does not allege that Austin was physically abused by Defendants in any fashion, but rather asserts that Defendants engaged in "emotional bullying" of Austin that was "oppressive and relentless," such that Austin "became flustered and confused." *Id.* The Amended Complaint fails to give specific details as to where any alleged interrogation(s) or confinement(s) took place, and also fails to identify which Defendants were present at particular times. Plaintiff, who was not an eyewitness to the events on that date, claims that school officials confined and interrogated Austin for "some four hours," without indicating whether such confinement was continuous or occurred intermittently throughout the day. *Id.*

Defendants' version of the same day's events is far more detailed than Plaintiff's, and Defendants' version has the benefit of being supported by a number of affidavits confirming the time

periods involved and the persons present at each time period.  In brief, Defendants contend that Austin was not subjected to a continuous, four-hour interrogation, but that various Defendants met with Austin throughout the day on November 2, 2009, for short periods of time.  The first meeting cited by Defendants involved Austin and Defendants Clepper and McConnell in Clepper's office for approximately five minutes in the morning, just as the school day began.  (Doc. 31, p. 5).  The second meeting involved Austin and Defendant Maxwell, the District's mental health therapist, in a conference room at the school for approximately 30 minutes later that same morning.  *Id.* at p. 41.  The third meeting involved Austin and Maxwell for approximately 20 minutes in the afternoon.  *Id.* at p. 42.  The last meeting is claimed to have lasted about 35 minutes in McConnell's office, with Austin, Clepper, Maxwell, and McConnell present.  *Id.* at p. 7.

     Plaintiff has generally denied the veracity of Defendant's more detailed timeline of events of November 2, even though the affidavits of Clepper, Maxwell, and McConnell tend to substantiate this timeline.  *Id.* at pp. 29-34, 37-43, 45-47.  The Court notes that Plaintiff has failed to present any counter-evidence setting forth her own timeline of events to show that a genuine issue of material fact exists.  In the face of Defendants' affidavit submissions, counter-evidence on the part of Plaintiff is required in order to establish a genuine issue of material fact.  *See Lower Brule*, 104 F.3d at 1021.  It is not enough to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  As Defendants have made a *prima facie* showing as to the events, times, and persons involved on November 2, and Plaintiff has failed to meet proof with proof, as required by Fed. R. Civ. P. 56(e), the timeline of events set forth by Defendants will be taken by the Court as true for purposes of deciding summary judgment.

     Turning to the events taking place on Tuesday, November 3, 2009, it appears the parties

agree that Austin came to school that day, and at some point, his teachers became concerned that he was having a seizure in class. A statement from the school nurse, Ms. Alma Gillean, confirms that she observed Austin having what she thought was a seizure, and she escorted Austin from a classroom to McConnell's office, where she, McConnell, and other witnesses waited for Plaintiff to arrive. (Doc. 31, p. 44). Aside from alleging that McConnell's office was a locked room from which Austin could not exit, Plaintiff's account of the events of November 3 does not conflict in substance with Defendants' account. Plaintiff maintains, however, that while waiting in McConnell's office that day, Austin was emotionally abused "to a level where he became totally paranoid and unable to disengage from the trauma." (Doc. 27, p. 8). Plaintiff never alleges that Austin was physically abused by Defendants that day, nor does she specify what was done or said to Austin that caused his reaction.

**III. Discussion**

Plaintiff, on behalf of Austin, asserts claims for denial of due process as a result of alleged threats, intrusion, unreasonable interrogation, harassment, and emotional intimidation suffered by Austin at school. Plaintiff also claims that school officials violated Austin's Fourth Amendment right to be free from false imprisonment and unreasonable searches, as well as his First Amendment right to be free from government interference and harassment in exercising his freedom of expression. Finally, Plaintiff claims that school officials established a custom of tolerating unconstitutional invasions of students' right on school grounds, which consequently violated Austin's right to due process. It is for the Court to determine whether any of the acts committed by Defendants against Austin rise to the level of a violation of his constitutional rights, pursuant to 42 U.S.C. §1983.

The law is clear that school officials are liable under §1983 if they are "deliberately indifferent to acts committed by a teacher that violated a student's constitutional rights." *Doe v. Gooden*, 214 F.3d 952, 956 (8th Cir. 2000). A plaintiff is required to establish that school officials "received notice of a pattern of unconstitutional acts, demonstrated deliberate indifference to the acts, failed to take sufficient remedial action, and that such failure proximately caused the injury to the student[]." *Id.* Here, in addition to the general claim that Defendants have an unconstitutional policy of tolerating violations of student rights, Plaintiff has asserted four particular violations of Austin's constitutional rights, namely the right to be free from 1) false imprisonment; 2) unreasonable searches; 3) interrogation/harassment/emotional intimidation/ and/or verbal abuse; and 4) unlawful restrictions on freedom of expression. The Court will consider these claims below.

### A. False Imprisonment

The Eighth Circuit has held that "false imprisonment is a state law tort claim. It is not coextensive with the Fourteenth Amendment, which protects only against deprivations of liberty accomplished without due process of law." *King v. Beavers*, 148 F.3d 1031, 1034 (8th Cir. 1998) (internal citation omitted), *cert. denied*, 525 U.S. 1002 (1998). Here, Plaintiff has clearly pled in her Amended Complaint only federal law claims pursuant to §1983, rather than state law claims. Nevertheless, even if the Court were to consider Plaintiff's claim for false imprisonment under state law, her claim would fail. Arkansas law requires that Plaintiff demonstrate "detention without sufficient legal authority" to prove the tort of false imprisonment. *Headrick v. Wal-Mart Stores, Inc.*, 293 Ark. 433, 435 (Ark. 1987). There is no evidence to show that Austin was actually detained, whether falsely or otherwise, at any time during November 2 or 3, 2009, at Waldron High School.

According to the facts before the Court, during the relevant dates discussed herein, Austin

had the capacity to come and go freely from the classrooms, offices, and conference rooms in which he was questioned at school, but he never attempted to do so. Plaintiff claims that the rooms in which Austin was questioned were locked so that he could not exit; however, the evidence submitted by Defendants establishes that none of these rooms could be locked from the inside, and at all times, the doors were unlocked to those inside the rooms. The affidavit of Registered Architect Tim A. Risley demonstrates that he reviewed photographs of the locking mechanism on the door to McConnell's office and "[e]ven if locked with a key on the outside, an individual inside the room can still exit the room without a key at any time, simply by operating the door handle." (Doc. 31, p. 49). The same locking mechanism is apparently present for student safety reasons on office doors throughout the school, including in Clepper's office. (Doc. 31, p. 31). The evidence as to these safety locks on Waldron High School doors is uncontroverted by any other submission of fact by Plaintiff. Moreover, Plaintiff does not allege that Austin attempted to leave any meeting with Defendants only to find the meeting room door locked. Furthermore, Plaintiff does not allege that any school official physically prevented Austin from leaving a school office or room on November 2 or 3. Plaintiff's claim for false imprisonment is therefore dismissed.

### B. Unreasonable Searches

The Supreme Court has found that because of a school's need to maintain order, neither a warrant nor probable cause is necessary in order to conduct a lawful search of a student. *New Jersey v. T.L.O.*, 469 U.S. 325, 340-41 (1985). Provided that there are reasonable grounds for suspecting that the student has violated the law or the rules of the school, and the scope of the search is reasonably related to the circumstances justifying the search, the search will be considered lawful. *Id.* at 341-42. The law established in *T.L.O.* specifies, in particular, that "maintaining security and

order in the schools requires a certain degree of flexibility in school disciplinary procedures . . ." *Id.* at 345. "Indeed, because . . . possession of weapons [has] become increasingly common among young people, an immediate response frequently is required not just to maintain an environment conducive to learning, but to protect the very safety of students and school personnel." *Id.* at 352-53.

In the case at bar, the only search alleged by Plaintiff in her Amended Complaint occurred on November 2, 2009, in Clepper's office, when Clepper asked Austin to demonstrate that he had no weapons. (Doc. 27, p. 6). The Court already made the finding that Clepper received reports from not one but several of Austin's teachers regarding Austin's behavior at school immediately preceding the events of November 2. It is clear that the motivation behind the teachers' reports was concern for Austin's safety and well-being, as well as the safety and well-being of Austin's fellow students and teachers. Plaintiff responds that there was no legitimate basis for concern about Austin's behavior at the time, as Austin's behavior was completely normal; however, as previously mentioned, whether Austin's behavior was objectively normal or objectively disturbing is irrelevant to the Court's inquiry. What matters is that Austin's teachers had reasonable grounds for concern that Austin could be a danger to himself or others. When Austin met briefly with Clepper and McConnell in Clepper's office at the start of the school day on November 2, Austin apparently emptied his pockets and lifted his shirt to show Clepper and McConnell that he did not have any weapons. (Doc. 31, p. 50). Such a limited search was reasonable under the circumstances. Accordingly, Plaintiff's unreasonable search claim is dismissed.

### C. Interrogation/Harassment/Emotional Intimidation/ and/or Verbal Abuse

As Plaintiff does not allege any physical abuse of Austin by school officials, her remaining allegations involve, at most, verbal abuse, including strident interrogation tactics, harassing

language, and verbal bullying. However, verbal abuse, including the use of demeaning and belittling references and "patently offensive language," is not viewed by the Eighth Circuit as a constitutional violation. *Doe v. Gooden*, 214 F.3d at 956. Accordingly, Plaintiff's allegations fail to amount to violations of Austin's constitutional rights and are therefore dismissed.

### D. Unlawful Restriction on Freedom of Expression

From the face of Plaintiff's Amended Complaint, there is no evidence that Defendants curtailed Austin's creative expression or that Austin was disciplined for freely expressing his views. Rather, Plaintiff contends that Austin was detained and questioned by school officials in retaliation for the exercise of his free speech rights. The Court finds that Austin's poetry and prose writings, submitted to Clepper by Austin's teachers out of apparent concern for Austin's well-being, were indeed scrutinized by Defendants and possibly others; however, there is no evidence that Austin was prohibited from producing further writings or disciplined at school as a result of these writings. Austin was merely questioned about these writings, and as described above, nothing about the questioning process rises to the level of a violation of Austin's constitutional rights.

In addition, the Court observes that student speech, in the special context of the school environment, may be regulated. The Supreme Court has held that "schools may regulate some speech even though the government could not censor similar speech outside the school." *Morse v. Frederick*, 551 U.S. 393 (2007) (citation omitted). Considering the allegations of Plaintiff with regard to Austin's First Amendment rights, the Court disagrees that Austin's speech and writings were improperly regulated by school officials at Waldron High. Schools are permitted to act when student speech "materially and substantially interfere[s] with the requirements of appropriate discipline in the operation of the school." *Burnside v. Byars*, 363 F.2d 744, 749 (1966). In the

instant case, Defendants acted out of concern that Austin's oral speech and writings, directed to his teachers and fellow students, indicated that Austin might pose a safety risk to himself or others at school.

The leading case in the Eighth Circuit involving student writings conveying a possible threat of violence is *Doe v. Pulaski Cnty. Special Sch. Dist.*, 306 F.3d 616 (8th Cir. 2002) (en banc). The *Pulaski* case involved a student who was suspended from school for writing a violent letter to a fellow student, expressing his intent to do her harm. *Id.* When a court is presented with a situation in which student writings convey a potential threat, the next step is to ask whether a "reasonable recipient would have interpreted [the student's writings] as a serious expression of an intent to harm or cause injury to another." *Doe*, 306 F.3d at 624. Here, Austin's teachers regarded Austin's writings as serious subjects of concern that warranted investigation by Clepper, the school safety officer. It is understandable that a school district would have an "obligation to ensure the safety of its students and reasonable concerns created by shooting deaths at other schools such as Columbine and the Red Lake Reservation school. . ." *D.J.M. ex re. D.M. v. Hannibal Public School Dist. No. 60*, 647 F.3d 754, 764 (8th Cir. 2011). The First Amendment does not require a "wait and see" approach when it comes to the safety of students.

The Court finds that there is no genuine dispute of material fact that Defendants had cause to investigate Austin's behavior. As there is no valid claim for an unlawful restriction on Austin's freedom of expression, and the actions taken by Defendants were reasonable, Plaintiff's First Amendment claim must also be dismissed.

### E.  Unconstitutional School Policy

As Plaintiff has failed to establish that any of Austin's constitutional rights were violated,

she fails also in her attempt to prove that Defendants had an unconstitutional school policy of tolerating student rights abuses. Therefore, her denial of due process claim concerning an unconstitutional school policy is dismissed.

## IV. Conclusion

Defendants' Second Motion for Summary Judgment (Doc. 30) is **GRANTED**. Plaintiff has failed to prove facts sufficient to show violations of her son Austin's constitutional rights, including his right to be free from false imprisonment; unreasonable searches; interrogation/harassment/ emotional intimidation/ and/or verbal abuse; or unlawful restrictions on his freedom of expression. In failing to show that Austin's constitutional rights were violated, Plaintiff has also failed to show a school policy of tolerating unconstitutional invasions of student rights. Since no genuine issue of material fact exists as to whether acts alleged by Plaintiff on the part of Defendants were in violation of 42 U.S.C. §1983, Plaintiff's case is hereby **DISMISSED WITH PREJUDICE**. Judgment shall enter contemporaneously herewith. The parties are to bear their own fees and costs.

IT IS SO ORDERED this 4th day of September, 2012.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE